**UNITED STATES of America,**

v.

**Ahmed Muse SALAD, Abukar Osman Beyle, and Shani Nurani Sheikh Abrar, Defendants.**

**Criminal No. 2:11cr34.**

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 30, 2012.

732

Benjamin Lucas Hatch, Joseph E. Depadilla, United States Attorney's Office, Norfolk, VA, Brian J. Samuels, United States Attorney Office, Newport News, VA, for United States of America.

Larry Mark Dash, Office of the Federal Public Defender, Norfolk, VA, Paul Geoffrey Gill, Office of the Federal Public Defender, Richmond, VA, Lawrence Hunter Woodward, Jr., Shuttleworth Ruloff Swain Haddad & Morecock PC, Virginia Beach, VA, Stephen Ashton Hudgins, Stephen A. Hudgins PC, Poquoson, VA, for Defendants.

## MEMORANDUM ORDER

REBECCA BEACH SMITH, Chief Judge.

This matter comes before the court upon the Defendants' Joint Motion to Dismiss Counts 16, 17, 18, 19, 22, 23, 24, and 25 and Memorandum in Support ("Motion"), ECF No. 504, filed on September 17, 2012. The United States opposed the Motion in its Consolidated Response ("Response"), filed on October 17, 2012. The Defendants filed a Reply ("Reply"), ECF No. 531, on November 1, 2012, and the matter is now ripe for review.

## I. MOTION AND ARGUMENT

The Motion challenges the court's jurisdiction over two sets of charges: four counts of Murder Within the Special Maritime and Territorial Jurisdiction of the United States, in violation of 18 U.S.C. § 1111 (Counts Sixteen through Nineteen); and four counts of Use, Carry, Brandish, and Discharge of a Firearm During a Crime of Violence Causing Death, in violation of 18 U.S.C. § 924(c) and (j) (Counts Twenty–Two through Twenty–Five). The parties agree that the alleged offenses took place on board the sailing vessel *Quest*, when that vessel was at sea approximately forty miles from the coast of Somalia. *See* Mot. at 2; Resp. at 140.

The Defendants' argument is twofold. First, the Defendants attempt to demonstrate that Congress lacks constitutional authority to define and punish alleged acts that "took place within the territory of Somalia" by foreign individuals "on a pirate vessel." Mot. at 3. In support of this argument, the Defendants attempt to prove that Somalia's territorial sea extends 200 nautical miles from its coast. Second, the Defendants, "[a]ssuming *arguendo* that the Court has prescriptive jurisdiction over the Capital Defendants," challenge the basis of statutory authorization for extraterritorial application of § 1111 and § 924 "in the territorial sea of Somalia." Mot. at 13.

The United States opposes the Motion. In its Response, the United States challenges the "single invalid premise" that undergirds the Defendants' arguments: the claim that Somali territory extends 200 nautical miles beyond the coast. Resp. at 137.

## II. LAW AND ANALYSIS

### A. Scope of Somalia's Territorial Sea and the Exercise of Jurisdiction Therein

The court first addresses the argument that these offenses took place in the territorial sea of Somalia, because most of the

Motion depends on the resolution of this question.

### 1. *United Nations Convention on the Law of the Sea*

■ The United Nations Convention on the Law of the Sea ("UNCLOS") limits a nation's territorial sea to twelve nautical miles. United Nations Convention on the Law of the Sea art. 3, Dec. 10, 1982, 1833 U.N.T.S. 397.[1] More than 160 countries have ratified UNCLOS, although the United States is not among them. *See Chronological Lists of Ratifications of, Accessions and Successions to the Convention and the Related Agreements as at 07 November 2012,* http://www.un.org/Depts/los/reference_files/ chronological_lists_of_ratifications.htm. The government of Somalia ratified UNCLOS in July, 1989. *Id.* In 1972, prior to ratification, Somalia had enacted a law claiming a 200–mile territorial sea. *See* Mot. at 5 & Ex. 1. Somalia has declined to repeal that law. Mot. at 5; Resp. at 142.

The United States takes the position that Somalia's ratification of UNCLOS "supersedes" the 1972 law. Resp. at 142. The Defendants concede that the Somali law contradicts the provisions of UNCLOS. *See* Mot. at 5–6. However, they claim that, because the United States has not ratified UNCLOS, the United States has no "standing" to rely on its terms. Mot. at 6–7; Reply at 4.

According to the Defendants, "Somalia has, repeatedly and stubbornly, continued to assert a 200 mile territorial sea." Reply at 2. The Defendants, repeatedly and stubbornly, insist that such assertions compel this court to recognize a 200–mile territorial sea. They do not. Whether Somalia has adjusted its domestic law to comply with its duties as a signatory to UNCLOS is a question far removed from the substance of this case.[2] *See* Mot. at 4–5; Reply at 2. Nor is it relevant that the United States has not ratified UNCLOS. Mot. at 6; *see also United States v. Alaska,* 503 U.S. 569, 588 n. 10, 112 S.Ct. 1606, 118 L.Ed.2d 222 (1992). This case does not involve a treaty dispute between the governments of the United States and Somalia. The United States does not seek, as the Defendants suggest, "to demand [UNCLOS] to be suspended." *See* Reply at 4. On the contrary, the government's argument is entirely in line with the provisions of UNCLOS and its description of Somalia's territorial sea. UNCLOS, by its terms, limits signatories to a maximum territorial sea of twelve nautical miles.

The Defendants finally argue that the UNCLOS provisions on piracy, contained in the section concerning the high seas, "only appl[y] to parts of the sea that are not included in the exclusive economic zone." Mot. at 16; *see also supra* note 1. The Defendants incorrectly read those provisions in isolation from other articles

---

1. UNCLOS also provides for an Exclusive Economic Zone ("EEZ") of "200 nautical miles from the baselines from which the breadth of the territorial sea is measured." UNCLOS art. 57. The EEZ is expressly distinct from the "territorial sea." *Id.* art. 55. Waters beyond those regions comprise the "high seas." *Id.* art 86. "[A]cts of piracy committed in the exclusive economic zone ... are treated as though they had been committed on the high seas." Robin Geiss & Anna Petrig, *Piracy and Armed Robbery at Sea: The Legal Framework for Counter–Piracy Opera-*

*tions in Somalia and the Gulf of Aden* 64 (2011).

2. Somalia's failure to amend the 1972 legislation complicates its ability to enforce certain economic rights in the EEZ. Such failure to update legislation does not function to reserve a twelve-mile territorial sea. One of the Defendants' own sources, a briefing from the American Society of International Law, *see* Reply at 3, makes this point quite clearly.

of the Convention. UNCLOS provides that the articles pertaining to the high seas, including piracy, "apply to the exclusive economic zone in so far as they are not incompatible with this part." UNCLOS art. 58(2); *see also* Geiss & Petrig, *supra* note 1, at 64 n. 293.

### 2. *Customary International Law*

■ Regardless of the binding effect of UNCLOS itself, the government alternatively argues that the twelve-mile limit represents customary international law, and, accordingly, defines the outermost boundary of Somalia's sovereign territory. Resp. at 143–46. Customary international law comprises "those rules that States universally abide by, or accede to, out of a sense of legal obligation and mutual concern." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 248 (2d Cir.2003). A treaty can constitute evidence of customary international law "if an overwhelming majority of States have ratified the treaty, *and* those States uniformly and consistently act in accordance with its principles." *Id.* at 256. As this court has noted, "with the exception of its deep seabed mining provisions, the United States has consistently accepted UNCLOS as customary international law for more than 25 years." *United States v. Hasan,* 747 F.Supp.2d 599, 635 (E.D.Va.2010).

■ The Defendants insist that the United States cannot resort to customary international law, both because the twelve-mile limit is not "part of the customary international law," Mot. at 6–7, and because United States officers have criticized customary international law as "not reliable," Reply at 5.[3] The Defendants' arguments are unpersuasive. Customary international law may be less attractive than binding treaty law for purposes of national security and international business transactions, but it does not follow from this assumption that customary international law is altogether unreliable. *See, e.g., United States v. Dire,* 680 F.3d 446, 461–62, 469 (4th Cir.2012).

The Defendants also fail to show that the twelve-mile limit is not part of customary international law. Approximately six UNCLOS signatories continue to claim territorial seas in excess of twelve nautical miles. *See* Mot. at 6. The Defendants suggest, implausibly, that intransigence of these nations precludes the twelve-mile limit from being considered customary international law. *Id.* The Defendants are incorrect. *See Hasan,* 747 F.Supp.2d at 630 n. 27 (E.D.Va.2010) ("A norm need not literally be implemented by every member of the international community in order to be 'universally' accepted for purposes of becoming a rule of customary international law."). The overwhelming majority of countries recognize the twelve-mile limit of sovereign territorial seas, and this court declines to depart from that consensus.

■ Based on the evidence presented, the court has no hesitation in finding that the twelve-mile limit accurately describes customary international law. *See Dire,* 680 F.3d at 459 (citing *United States v. Alaska,* 503 U.S. at 588 n. 10, 112 S.Ct. 1606);[4] *see also* Thilo Neumann & Tim Rene Salomon, Am. Soc'y Int'l Law, *Fish-*

---

**3.** The Defendants base their opposition, in part, on the testimony of high-ranking officials from the Departments of State and Defense, who have encouraged the United States Senate to ratify UNCLOS. *See* Mot. at 6; Reply at 5.

**4.** In *Dire,* the Fourth Circuit affirmed the district court's conclusion that UNCLOS provisions pertaining to the definition of piracy represented customary international law. The court adopts the same reasoning for purposes of analyzing the provisions related to the territorial sea.

*ing in Troubled Waters—Somalia's Maritime Zones and the Case for Reinterpretation* (Mar. 15, 2012), http://www.asil.org/pdfs/insights/insight120315.pdf ("[T]he 1972 Somalian territorial sea claim contravenes public international law.... [B]oth Article 3 UNCLOS and identical customary international law lay down a maximum breadth of twelve [nautical miles]....").

In sum, although the Defendants provide ample evidence that Somalia has *claimed* a 200–mile territorial sea, they fail to demonstrate that Somalia *possesses* exclusive territorial sovereignty forty miles from its shore, where the alleged offenses occurred. In effect, the Defendants ask this court to hold that a forty-year-old Somali law—which was passed before that country ratified UNCLOS, and which contradicts a near-unanimous international understanding about the size of territorial seas—precludes this court from exercising jurisdiction over offenses committed outside the twelve-mile territorial limit. The Defendants concede that "[t]here has been no controlling United States executive, judicial, or legislative authority that has ruled on what the United States views the territorial waters of Somalia to be." Reply at 8. As a result, they urge the court to default to that Somali statute, the continuing legality of which has been sharply questioned.[5] The court declines to do so. The argument that these offenses took place in Somalia's territorial sea must fail.

## B. Statutory Basis for Extraterritorial Application

Because the court holds that the alleged events did not take place in the territorial sea of Somalia,[6] the Defendants' second set of arguments are easily resolved. The United States has the burden of proving that the murders took place "[w]ithin the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b). Such jurisdiction is defined by 18 U.S.C. § 7, and includes, *inter alia,* the "high seas," § 7(1), and "[a]ny place outside the jurisdiction of any nation with respect to an offense by or against a national of the United States," § 7(7).

The Defendants concede the extraterritorial application of § 1111, and argue only that such application cannot reach the sovereign territory of another nation. Mot. at 14 (*"There is no doubt that Congress intended a certain level of extraterritorial applicability* for 18 U.S.C. § 1111.... [T]he next question is whether Congress ... expressed a legislative intent to punish these crimes *within the territorial waters of Somalia."* (citation omitted) (emphasis added)). Having found that the events did not occur in the territorial sea of Somalia, the court finds no controversy between the parties as to the extraterritorial application of these statutes.

## III. CONCLUSION

For the reasons stated herein, the Motion is **DENIED.** The Clerk shall forward a copy of this Memorandum Order to counsel for each Defendant, and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**

5. *See, e.g.,* Raul Pedrozo, Am. Soc'y Int'l Law, *Which High Seas Freedoms Apply in the Exclusive Economic Zone?,* 1 LOS Reports 1, 3 (Apr. 2010), http://www.asil.org/losreports/LOSReportsVoll–2010w4Pedrozo.pdf (noting that Somalia and others "illegally claim territorial seas in excess of 12 [nautical miles]").

6. *See supra* Part II.A.